UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IJEOMA OKOLO,                                        :

                Plaintiff,              :       13cv4273 (PGG) (DF)

      -against-                      :       **REPORT AND**
                                **RECOMMENDATION**
COMMISSIONER OF SOCIAL SECURITY,          :

               Defendant.            :
------------------------------------------------------------X

**TO THE HONORABLE PAUL G. GARDEPHE, U.S.D.J.:**

     Plaintiff Ijeoma Okolo ("Plaintiff") seeks review of the final decision of defendant

Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant" or the

"Commissioner"), denying Plaintiff's requests for waiver of recovery of two overpayments of

Supplemental Security Income ("SSI") benefits that she received:  one on her own behalf, and

the other on behalf of her minor son, referred to herein as "J.O."

     Defendant has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for

judgment on the pleadings affirming the Commissioner's decision and dismissing the Complaint.

(Dkt. 17.)  Plaintiff has submitted an opposition to Defendant's motion (Dkt. 23), which, as

discussed below, this Court construes as a cross-motion for judgment on the pleadings in her

favor.

     For the reasons set forth below, I respectfully recommend that Defendant's motion and

Plaintiff's cross-motion each be granted in part and denied in part.  Specifically, I recommend

that the Commissioner's decision be affirmed with respect to the $15,115.00 overpayment of

J.O.'s benefits, and reversed and remanded for further proceedings with respect to the $821.00

overpayment of Plaintiff's benefits.

### <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

At issue in this case is whether Plaintiff was without fault for overpayments of SSI benefits, which are available to individuals with limited income and resources who are disabled within the meaning of the Social Security Act (the "Act").  *See* 42 U.S.C. § 1382(a).  The benefits at issue were received by Plaintiff from April 2006 through April 2008, during which period she received benefits in the amount of approximately $30 per month on her own behalf, and $600 per month on J.O.'s behalf.  In 2008, the Social Security Administration (the "Agency") determined that that Plaintiff and J.O. had not been eligible for the benefits they were paid during that period because, during that time, Plaintiff possessed a bank account with a balance in excess of the maximum amount of resources allowed for SSI eligibility.  It is unclear from the Record how or when the Agency became aware of the funds in Plaintiff's account, or, indeed, their precise amount.  In any event, at no point during the administrative proceedings, nor in the current action, has Plaintiff challenged the determination that she and J.O. were ineligible for benefits, and the evidence in the Record, including Plaintiff's own submissions and testimony, all suggest that Plaintiff possessed the excess resources at the time she originally applied for SSI benefits.

Plaintiff did challenge the Agency's denial of her request that recovery of the overpayments be waived, arguing to the Agency that she was without fault for the overpayments, an issue as to which she bore the burden of proof before the Agency.  This challenge was the

---

[1] The facts set forth in this section are taken from the administrative record (referred to herein as the "Record" or "R."), which includes, *inter alia*, the transcript of an August 4, 2011 hearing held before Administrative Law Judge Paul A. Heyman (the "ALJ"), at which Plaintiff testified.  As noted throughout this section, several documents that relate to the overpayments at issue here were not included in the record before the ALJ, but some were added to the Record on Plaintiff's administrative appeal.

subject of protracted administrative proceedings spanning the course of five years, most of which

centered on Plaintiff's contention that, at the time she applied for SSI benefits, she had not been

informed of the SSI eligibility requirements because a social worker had essentially completed

the application on Plaintiff's behalf, due to Plaintiff's hearing impairment (the disabling

condition that underlay her application for benefits), and had not explained any resource limits to

her.[2]  The Commissioner's final decision, though – a decision issued by the Appeals Council on

April 18, 2013 – rested on a determination that Plaintiff had been informed, in *writing*, of the SSI

eligibility requirements prior to the overpayment.  This Court ultimately concludes that

substantial evidence supports the determination that Plaintiff received written notice with respect

to J.O.'s benefits, but not the determination that she received such notice with respect to her own

benefits.  The lengthy administrative proceedings upon which this conclusion is based are

summarized below.

### A.       Plaintiff's and J.O.'s Applications for SSI Benefits

Plaintiff's application for SSI benefits is not included in the Record, but it is undisputed

that she applied for SSI benefits in March 2001 (when she was 22 years old) on the basis of her

hearing impairment.  (*See* Memorandum of Law in Support of The Commissioner's Motion for

Judgment on the Pleadings, dated June 20, 2014 ("Def. Mem.") (Dkt. 18), at 1; *see also* R. at 49,

---

[2] It also appears that both Plaintiff and J.O. also received Social Security Disability
Insurance benefits ("SSDI") while they received SSI.  (*See* R. at 72 (DIB Insured Status Report,
indicating that Plaintiff was insured for DIB through December 31, 2005), 335 (notice regarding
J.O.'s SSI benefits, indicating that J.O. received Social Security benefits in the amount of $53.00
per month, and that his parent received Social Security benefits in the amount of $589.00 per
month).)  SSDI benefits are available to disabled individuals with "insured status" based on work
history, as well as to certain of such individuals' dependents (including unmarried minor
children), and, unlike SSI, SSDI benefits are not subject to income or resource limits.  *See* 42
U.S.C. § 423(a)(1).  An individual may be eligible to receive SSDI and SSI concurrently when
the amount of his or her SSDI benefits is below the income limit for SSI eligibility.  *See*
http://www.ssa.gov/redbook/eng/supportsexample.htm (last visited Aug. 27, 2015).

161.)  Plaintiff maintained throughout the administrative proceedings, and continues to maintain

in the current action, that, when she applied, she was accompanied to an Agency office by her

foster-care caseworker, who responded to the Agency representative's questions, and that

Plaintiff could not hear or understand the vast majority of what was being said between the two,

during the application process.

Plaintiff applied for SSI benefits on J.O.'s behalf on or about January 5, 2005, when J.O.

was approximately two and a half years old.  (*See id.* at 328-31.)  The Record contains a

completed, but unsigned, "Application for Supplemental Security Income" that appears to be

computer generated and indicates that it was completed by Plaintiff on J.O.'s behalf.  (*See id.*)

This document was not before the ALJ, but was added to the Record by the Appeals Council

before it issued its final determination.  (*See id.* at 364.[3])  With respect to resources, this

application stated that "[h]e [*i.e.*, J.O.] [did] not own any type of resource."  (*Id.* at 329.)  The

application includes no information as to Plaintiff's resources, nor is there any indication in the

application that this information was solicited during the application process.  (*See id.* at 328-31.)

### B. Notices Regarding J.O.'s Eligibility for Benefits

The Record also contains two notices sent to Plaintiff regarding the calculation of J.O.'s

benefits prior to the overpayment period (*see id.* at 332-44; 345-62), although it contains none

with respect to Plaintiff's own benefits.  As with the application for J.O.'s benefits, neither of the

notices regarding J.O.'s benefits were before the ALJ, but both were added to the Record by the

Appeals Council shortly before issuing the Commissioner's final decision.  (*See id.* at 365.)

---

[3] The Appeals Council characterized this document as "the application [Plaintiff]
submitted on behalf" of J.O.  (*Id.* at 10, 364.)

The first notice, dated January 29, 2005, indicates that the Agency had determined that J.O. would be eligible for monthly SSI payments in the amount of $569.00 each month beginning in March 2005, and that the payments would be sent to Plaintiff as his representative payee.  (*Id.* at 332.)  The notice instructed Plaintiff that, because, "[a]s a representative payee for this individual, [she] ha[d] certain reporting responsibilities," she "should read . . . the rest of [the] notice carefully."  (*Id.*)  Included with the notice was an enclosure titled "How Parents' Income and Resources Affect a Child's SSI."  (*Id.* at 340-42.)  The enclosure contained an explanation that "resource" is defined as "money and anything else that parents own and can turn into cash . . . includ[ing] cash, bank accounts, life insurance policies, automobiles, and other property," and that the "resource limit" for SSI eligibility for a child was $2,000 in the child's name, with anything over $2,000 held by the child's parent (or $3,000, if two parents live in the household) counting towards the child's resources.  (*Id.* at 341.)

The second notice, dated February 21, 2005, indicates that the Agency had determined that J.O. was eligible to receive SSI benefits for the month of February 2005, and explains when the benefits would be received.  (*Id.* at 345-62.)  This notice states that J.O.'s SSI payments "[might] change if his circumstances change[d]," and that Plaintiff was therefore "required to report any change in his situation that [might] affect his SSI," including if the "income or resources for [J.O.] or members of his household change[d]."  (*Id.* at 348.)  The notice also included the same enclosure as the January 2005 notice regarding how parents' income and resources affect a child's SSI eligibility.  (*See id.* at 357-59.)

### C.   **Overpayment Notices, Waiver Requests, and Initial Denials**

By letter dated May 8, 2008, the Agency notified Plaintiff that it had overpaid Plaintiff in the amount of $821.00, for the period from April 2006 through April 2008, as a result of excess

resources.  (*Id.* at 30-38.)  Around the same time, the Agency also notified Plaintiff that it had

overpaid her in the amount of $15,115.00 for J.O., also on the basis of Plaintiff's excess

resources.  (*See* R. at 191-92 (notice of right to request personal conference regarding

overpayment), 193-95 (notice of denial of request for reconsideration of waiver decision).[4])

In June 2008, Plaintiff requested that the Agency waive the overpayments, submitting

separate requests as to each overpayment.  (*Id.* at 39-46 (request, dated June 16, 2008, for waiver

of Plaintiff's overpayment), 180-88 (request, dated June 2008 [specific day illegible], for waiver

of J.O.'s overpayment).)  The contents of the waiver requests are substantially the same.  In each,

Plaintiff checked the box indicating that the overpayment should be waived on the grounds that

"[t]he overpayment was not [her] fault and [she] could not afford to pay back the money."  (*Id.*

at 39, 180.)  With respect to why she was without fault for the overpayments, Plaintiff stated that

she "did not know . . . that [she] was not supposed to have or open any account" and that she

"never knew that [she was] not supposed to have the money in the bank," noting that she was

"deaf and most of [her] understanding [was] done through reading people[s'] lips."  (*Id.* at 40;

*see id.* at 181.)  Plaintiff also provided information as to her resources, income, and monthly

expenses.  (*Id.* at 42-44, 184-86.)

On June 23, 2008, the Agency sent two separate notices informing Plaintiff of her right to

request a personal conference as to her waiver requests.  (*Id.* at 47-48, 178-79.)  It is apparent

that Plaintiff was afforded such a personal conference, as the Record contains an undated

document titled "Special Determination," which appears to be a summary of the findings made at

that conference, completed by Claims Representative M. Acevedo.  (*See id.* at 60.)  According to

---

[4] The overpayment notice based on J.O.'s SSI benefits is not included in the Record, but is referenced in these cited communications.

this determination, Plaintiff explained, at the conference, that she was not aware of SSI's resource limits, but Acevedo "felt that [Plaintiff] was not being truthful[,] [as] [h]er story kept changing," and as "she [had] been seen by many [claims representatives] and [e]very story [was] always different." (*Id.*) Acevedo found Plaintiff to be at fault "because she was given her reporting responsibilities when she applied and in other documents when she came into the office to address other matters," although Acevedo cited no specific documents in support of this finding. (*See id.*) Acevedo also noted that Plaintiff had "submitted a copy of a check, showing the money [*i.e.*, the over-resource amount, resulting in the overpayment] was given to a relative" (*id.*), later determined to be Plaintiff's mother.

The Agency initially denied the waiver requests on the basis that Plaintiff was at fault in causing the overpayments (*see id.* at 175-77 (denial as to J.O.)[5]), but then, on reconsideration, determined that, although Plaintiff was *not* at fault for the overpayments, she was still not entitled to a waiver because, based on the financial information presented by Plaintiff, the Agency "[could] not determine" that Plaintiff was unable to repay the overpaid amount (*id.* at 193-95 (determination as to J.O.), 54-56 (determination as to Plaintiff)). Plaintiff requested hearings as to each determination. (*See id.* at 51 (Plaintiff), 196 (J.O.).)

### D.   Initial ALJ Hearings and Decisions

Plaintiff appeared at two separate hearings before the ALJ.[6] The first, with respect to Plaintiff's $821.00 overpayment, took place on December 22, 2008. (*See id.* at 94.) The second,

---

[5] The Record does not contain the initial denial of Plaintiff's request of a waiver of the overpayment as to her own SSI claim.

[6] Plaintiff appeared on her own at both hearings, but, before the ALJ issued his decisions, Plaintiff appointed Belkys R. Garcia, Esq., of the Legal Aid Society, as her representative in connection with her claim. (*See id.* at 94, 84-86.) At a later hearing, where the overpayments of both Plaintiff's and J.O.'s benefits were addressed, Ms. Garcia acted as counsel for Plaintiff with

with respect to J.O.'s $15,115.00 overpayment, took place on February 10, 2009.  (*See id.* at 269.)  Neither hearing transcript is included in the Record, though, because, as discussed below, the recording of the first hearing was apparently "defective," and, during the second hearing, the ALJ referred to testimony taken at the first hearing, and so the Appeals Council eventually directed that new hearings be held as to both waiver requests.  Nonetheless, as the ALJ's initial findings have some relevance to the current action, they are discussed briefly here.

The ALJ, by two separate decisions dated June 26, 2009, denied both waiver requests. (*Id.* at 94-97 (decision as to Plaintiff), 269-72 (decision as to J.O.).)  The decisions are substantially the same.  The ALJ determined, based solely on his observation of Plaintiff at the hearing – and making no reference to the fact that the Agency had apparently determined that Plaintiff's hearing impairment was a disabling condition – that Plaintiff's "ability to hear was unrestricted," and found her contention that she had been unable to understand her responsibilities at the time she applied to be "without merit."  (*Id.* at 96, 271.)  Citing to no particular evidence, the ALJ also stated that Plaintiff had been informed of her "responsibilities regarding resources" because she "had been provided written paperwork in the past," had "undergone multiple redeterminations of her benefits over the years," and, in applying for J.O.'s benefits, "would have had to read and sign applications that also explained the responsibilities of the SSI program."  (*Id.*)  The ALJ also referred to Acevedo's finding that Plaintiff "was not being truthful."  (*Id.*)  The ALJ further noted that Plaintiff had written a check in the amount of $13,000 to her mother in May 2008 (after the period during which Plaintiff and J.O. had been

---

respect to both issues (*see id.* at 142), although she explained that she had not actually been listed as a representative with respect to J.O.'s claim (*id.* at 144).  She also explained that, at the time she was appointed as Plaintiff's representative, she had been unaware that a hearing on Plaintiff's claim had already taken place.  (*Id.*)

overpaid), making it "obvious" that Plaintiff was "trying to dispose of the money by giving it to somebody else." (*Id.*)  He concluded that Plaintiff had "failed to furnish information that she knew was material" to her and J.O.'s eligibility for SSI, and that she was therefore at fault for the overpayments. (*Id.*)[7]

### E.   First Request for Review, and Review by the Appeals Council

Plaintiff then requested review of the ALJ's decisions in July and August 2009. (*See id.* at 99 (request regarding Plaintiff, dated July 2, 2009), 103 (request regarding J.O., dated Aug. 4, 2009).)  She supported the request for a waiver of the overpayment of her own benefits with a letter indicating that, at the time she had applied for SSI benefits, her ability to both hear and to speak had been poorer than at time of the hearing, because she "had just left foster care and was wearing new hearing aids," and because she had "just [come] from a different country where languages [were] different." (*Id.* at 100.)  With respect to the check she had written to her mother, she stated that she had done so because an Agency representative had told her that, "in order to get back [her SSI benefits,] [she] had to clear the money out of the account." (*Id.* at 101.)  She stated that, "[e]ach time [she] went to [the] SSI office[,] [she tried] to do the right thing, by doing everything that [she] was told to do." (*Id.*)

By Order dated March 11, 2011, the Appeals Council remanded both Plaintiff's and J.O.'s waiver requests to the ALJ. (*Id.* at 115-17; *repeated at* 278-80.)  In its Order, the Appeals Council noted that the tape of the December 22, 2008 hearing was "defective," and that, at the February 10, 2009 hearing, the ALJ "referenced testimonies he had elicited from [Plaintiff] at the

---

[7] In the decision as to Plaintiff's overpayment request, the ALJ also addressed, and rejected, an argument raised in a letter by Plaintiff's counsel (and not at issue here) that the $821.00 overpayment was below the "tolerance amount," such that Plaintiff would be entitled to a waiver of overpayment. (*See id.* at 87, 96; *see also infra* at I(C)(2).)

prior hearing." (*Id.* at 115, 278.)  The Appeals Council stated that it was therefore "unable to give proper consideration to [Plaintiff's] request for review"; as a result, it vacated both of the ALJ's prior decisions and remanded both waiver requests to the ALJ for a new hearing.  (*Id.*)

The Appeals Council further instructed that, upon remand, the ALJ should consider whether Plaintiff "willfully and knowingly" failed to report excess resources to the Agency, stating (erroneously) that Plaintiff could only be found to be at fault on the basis of such a determination.  (*Id.* at 116, 279.[8])  As discussed below, the Appeals Council, in its final determination, acknowledged that this this showing was not in fact required.  (*Id.* at 10.)

### F.       **Further Hearing before the ALJ**

On August 4, 2011, the ALJ held a hearing with respect to both of Plaintiff's waiver requests.  (*See id.* at 140-73.)  Plaintiff, represented by counsel, appeared and testified at the hearing with the aid of a sign language interpreter.  (*See id.*)

At the hearing, the ALJ asked Plaintiff several questions regarding the check that she had written to her mother (*see id.* at 146-52, 167-68), although this line of questioning was of questionable relevance to the waiver requests at issue, as Plaintiff had not written the check until after the overpayment period.  Plaintiff testified that she wrote the check in May 2008 (*id.* at 148) because, at that point, she had received a letter from the Agency stating, in her words, that "they were not going to give me SSI anymore because I had so much money, and they told

---

[8] The provision of the Program Operations Manual ("POMS") referenced by the Appeals Council states that, where the recipient's resources "exceed the limit by $50.00 or less," the claimant will not be found to be at fault unless the Agency determines that he or she "willfully and knowingly failed to report the value of his or her resources accurately and timely."  POMS § SI 02260.035, *available at* https://secure.ssa.gov/poms.nsf/lnx/0502260035 (last visited Aug. 27, 2015).  As the overpayments at issue far exceeded $50.00, that provision is inapplicable to Plaintiff's waiver requests.

me that if I wanted to continue to get money, I have to go there, and I have to show that I really
got rid of the money" (*id.* at 150).  She testified that her mother had returned the funds to her,
"portion by portion," throughout the remainder of 2008 (*id.* at 153), and that Plaintiff then used
these funds to "pay bills and different things" (*id.* at 154), including expenses related to her
husband's immigration process (*id.* at 153).[9]  As to the source of the funds, Plaintiff's testimony
is not entirely clear, but appears to reflect that she had begun saving while in foster care, that the
savings were not in her name until she left foster care, and that she had around $10,000 saved at
the time she first applied for SSI.  (*Id.* at 157.)

In response to further questioning from the ALJ, Plaintiff testified that she had received a
bachelor of science in business management from Monroe College in 2001 (*id.* at 156), although,
in her affirmation regarding the current motions, Plaintiff states that she "had not graduate[d]
from college when [she] . . . applied," and that she "did not even graduate until after [she] had
[her] older son," presumably J.O., who was born in 2002 (Affirmation in Opposition to Motion,
dated Nov. 7, 2014 ("Pl. Aff.") (Dkt. 23), at 3-4)).  The ALJ also asked Plaintiff a series of
pointed questions regarding her awareness of the fact that SSI was a needs-based program, to
which Plaintiff's counsel eventually objected.  (*See id.* at 159 (Plaintiff's attorney stating,
"[s]he's answered that three times already," and, after further questioning, "[a]gain, I believe
she's answered this question several times").)  In this regard, though, Plaintiff testified that her
social worker had told her that she could apply for SSI on the basis of her disability, that she had

---

[9] When the ALJ began to ask Plaintiff regarding proof of expenses she had paid,
Plaintiff's counsel inquired as to the relevance of the ALJ's line of questioning to Plaintiff's
waiver request, and the ALJ withdrew the question and moved to a different line of inquiry.  (*Id.*
at 154-55.)

believed that SSI eligibility was based solely on disability, and that she did not know that SSI

was a needs-based program.  (*Id.* at 158-59.)

Plaintiff's attorney then continued the questioning of Plaintiff.  (*Id.* at 160.)  Plaintiff

testified that, while she was in foster care, she did not receive proper treatment and was not given

"the right hearing aid," and that she only began to receive the services she needed after she left

foster care.  (*Id.* at 162.)  She also testified that, when she first went to apply for SSI, she "ha[d]

to turn down [her] hearing aid because [her] hearing aid took [in] too many sounds, and [she

couldn't] even understand what the person [was] saying."  (*Id*; *see id.* at 165)  According to

Plaintiff, the Agency representative "mostly just spoke to [Plaintiff's] social worker," rather than

to Plaintiff (*id.*), and "[t]he social worker answered most of the questions" (*id.* at 163).

Plaintiff testified that, when she applied for SSI, she had not been informed of any

resource limits.  (*Id.*)  According to Plaintiff, she had never reported the funds in her bank

account to the Agency because she "never knew that [she was] not supposed to have that money

until they sen[t] a letter to [her]" in 2008.  (*Id.* at 164.)  She testified that, when she met with an

Agency worker in 2008 after receiving the letter, she was not provided with an interpreter, and

the meeting had occurred in "a bigger room with too many people," such that she could not hear

properly.  (*Id.* at 164-65.)  She again testified that, at that meeting, she had understood the

worker to tell her that "[she] ha[d] to get rid of" her excess resources in order to continue

receiving SSI.  (*Id.* at 165.)  She also testified that, at her previous hearing before the ALJ, she

had been unable to hear clearly or understand because she had been unable to read the ALJ's

lips.  (*Id.* at 166.)

At the close of the hearing, Plaintiff's attorney made a brief closing statement, with

periodic pauses to discuss the issues of the case with the ALJ, during which the ALJ expressed

an (erroneous) belief that a primary issue in the case was whether Plaintiff was eligible for SSI while Plaintiff's resources were in her mother's possession.  (*See id.* at 169-72.)  Plaintiff's attorney explained that, after receiving the overpayment notices, Plaintiff's "SSI terminated, and she lived through the penalty, and then her SSI turned back on later," such that the issue was solely whether Plaintiff was eligible for a waiver of recovery.  (*Id.* at 171.)

### G.      The ALJ's Decision after Remand

On September 16, 2011, the ALJ issued a decision denying Plaintiff's request for a waiver of her SSI overpayment, based on a determination that Plaintiff was at fault in causing the overpayment.  (*See id.* at 22-26.)  Although the ALJ's decision with respect to the waiver of the overpayment of J.O.'s benefits is not included in the Record, both Plaintiff's counsel in appealing that decision, and the Appeals Council in granting the request for review, state that the request for a waiver of J.O.'s overpayment was denied for substantially the same reasons as the request related to Plaintiff's overpayment.[10]  (*See id.* at 319-27, 363-68.)

In his decision, the ALJ reviewed Plaintiff's testimony with respect to her awareness of the reporting requirements and her hearing impairment.  (*Id.* at 24-25.)  The ALJ also noted that Plaintiff had testified that she received her bachelor's degree in 2001 (around the time she had applied for SSI benefits), that there was "no indication that [Plaintiff had] any mental issues or reading problems," that Plaintiff was fluent in English, and that she was a "relatively young individual."  (*Id.* at 25.)  He stated that, "[w]ith these factors in mind," he could not see "any reason why [Plaintiff] would have difficulty reading and understanding her written reporting responsibilities, irrespective of her deafness."  (*Id.*)

---

[10] In any event, as discussed below, it is the Appeals Council's subsequent decision – not the ALJ's decision – that is under review here.

Despite the fact that no copy of Plaintiff's initial application for benefits had been placed before the ALJ, the ALJ stated that, "when [Plaintiff] signed her initial 2001 application, it included written reporting responsibilities before the perjury clause." (*Id.*) As in his prior decision, the ALJ also stated, without citing to any specific documents (and referencing only Acevedo's findings, which, in turn, were not supported by any documents), that "other documents are provided to a claimant when they first become eligible for their checks, which would also include written notice of her responsibilities"; the ALJ further stated that Acevedo had "acknowledged" Plaintiff's "lack of truthfulness." (*Id.*) The ALJ then noted that, according to the "computer printout" of Plaintiff's SSI history, Plaintiff had undergone redeterminations of her SSI eligibility in 2002 and 2003, and stated that, "[a]t these occasions, [Plaintiff] would have attested to having resources below the $2,000.00 SSI limit, and this would have been in a written format," although, again, no documentation regarding these redeterminations had been placed before the ALJ. (*Id.*) Finally, the ALJ stated that Plaintiff's writing of a check to her mother "suggest[ed] . . . a knowing and willful attempt to conceal resources." (*Id.*) He then concluded that Plaintiff was not without fault in incurring the overpayment and that she had "willfully and knowingly failed to report excess resources" (*id.*); on these bases, the ALJ denied Plaintiff's waiver request (*id.* at 26).

## H.   <u>Second Request for Review, and Review by the Appeals Council</u>

Plaintiff, through counsel (another attorney from the Legal Aid Society, Andrei Ziabkin, Esq.), requested review of the ALJ's decisions as to both waiver requests on November 10, 2011 (*id.* at 315), and, on January 30, 2013, submitted written arguments in support of the request for review (*id.* at 319-27). In this submission, Plaintiff's counsel argued that the ALJ had erred in five respects:  first, by relying on evidence not in the record (such as

Plaintiff's original SSI application and "other documents" purportedly notifying Plaintiff of her reporting responsibilities); second, by relying on Acevedo's undated and unsigned determination; third, by "failing to make appropriate findings regarding [Plaintiff's] credibility," particularly as Plaintiff had been consistent regarding her knowledge of her reporting responsibilities; fourth, by failing to develop the record adequately regarding the overpayment period (*i.e.*, by obtaining copies of the documents purportedly notifying Plaintiff of the SSI eligibility and reporting requirements, or by subpoenaing Acevedo); and, fifth, by "erroneously focus[ing] on the transfer of the resource as proof of [Plaintiff's] willfulness, when it was after the overpayment period in question" and was made based on Plaintiff's understanding of instructions given by the Agency. (*Id.* at 326.)

By notice dated February 22, 2013, the Appeals Council granted Plaintiff's request for review, but indicated that, for the same reasons it eventually discussed in its final decision (reviewed in detail in Discussion Section II, *infra*), it intended to affirm the ALJ's decision that Plaintiff was at fault for the overpayments. (*Id.* at 363-68.) The Appeals Council also added evidence to the record, including the unsigned SSI application Plaintiff apparently filed on J.O.'s behalf, as well as the January and February 2005 notices sent to Plaintiff regarding J.O.'s eligibility for SSI benefits. (*See id.* at 364-65.) The Appeals Council informed Plaintiff that, before it proceeded to issue a final determination, Plaintiff would have a right to submit additional arguments or evidence, to request an appearance before the Appeals Council, and to request a hearing before the ALJ. (*Id.* at 366.) Plaintiff did not submit any additional arguments or evidence, or request an appearance or hearing. (*See id.* at 9.) The Appeals Council then issued a decision denying both waiver requests. (*See id.* at 9-12.) This decision – the final

decision of the Commissioner – is now before this Court and is reviewed in the discussion below.

## I.   The Current Action and Motion before This Court

Plaintiff, acting *pro se*, filed the Complaint in the current action on June 19, 2013, seeking this Court's review of the Appeals Council's final decision.  (*See* Complaint, dated June 19, 2013 (Dkt. 2).)  At the same time, Plaintiff filed a request to proceed *in forma pauperis* (*see* Dkt. 1), which was later granted (*see* Dkt. 3).  The case was referred to me on August 1, 2013.  (*See* Dkt. 6.)  After a temporary stay (*see* Dkts. 10, 11), Defendant requested, and received, two extensions of time to file her Answer and move for judgment on the pleadings (*see* Dkts. 12, 13, 15, 21).

Defendant then filed her Answer and the current motion for judgment on the pleadings on June 20, 2014.  (*See* Answer, dated June 20, 2014 (Dkt. 16); Notice of Motion, dated June 20, 2014 (Dkt. 17); Def. Mem.)  On October 8, 2014, this Court, having received no opposition or cross-motion from Plaintiff, directed her to file her opposition, and cross-motion, if any, no later than November 7, 2014.  (*See* Dkt. 22.)  Plaintiff then filed an opposition to Defendant's motion on November 7, 2014, but filed no separate cross-motion.  (*See* Pl. Aff.)  Nonetheless, given this Court's obligation to construe *pro se* papers liberally to raise the strongest arguments they suggest, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority), this Court construes Plaintiff's opposition as a cross-motion for judgment on the pleadings in her favor, pursuant to Rule 12(c), *see Houston v. Colvin*, No. 12cv03842 (NGG), 2014 WL 4416679, at *2 n.3 (E.D.N.Y. Sept. 8, 2014) (construing *pro se* Plaintiff's opposition to Defendant's motion for judgment on the pleadings as a cross-motion for judgment on the pleadings).

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

#### A.   Standard of Review

Judgment on the pleadings under Rule 12(c) is appropriate where "the movant establishes 'that no material issue of fact remains to be resolved,'" *Guzman v. Astrue*, No. 09cv3928 (PKC), 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990)), and a judgment on the merits can be made "'merely by considering the contents of the pleadings,'" *id*. (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

Judicial review of the Commissioner's final decision is limited.  The Commissioner's decision is final, provided that the correct legal standards are applied and findings of fact are supported by substantial evidence.  42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  "Where an error of law has been made that might have affected the disposition of the case, [a] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ."  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal quotation marks and citation omitted).  Thus, the first step is to ensure that the Commissioner applied the correct legal standards.  *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

The next step is to determine whether the Commissioner's decision is supported by substantial evidence.  *See Tejada*, 167 F.2d at 773; *see Howard v. Sec'y of Health and Human Servs.*, 741 F.2d 4, 8 (2d Cir. 1984) (conducting substantial evidence review of determination that claimant was not without fault with respect to overpayment).  Substantial evidence "means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted).

In making this determination, a court must consider the underlying record, but does not make a

*de novo* determination.  *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the

Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, we will not substitute our judgment for that of the Commissioner."); *Schaal v.*

*Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.

1997).  Therefore, if the correct legal principles have been applied, the court must uphold the

Commissioner's decision upon a finding of substantial evidence, even where contrary evidence

exists.  *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial

evidence to support either position, the determination is one to be made by the factfinder.");

*DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998) (affirming decision where

substantial evidence supported both sides).

### B.   <u>SSI Eligibility and Overpayments</u>

SSI is a means-tested benefit, and is available to aged, blind, and disabled individuals

who satisfy certain statutory income and resource requirements.  *See* 42 U.S.C. § 1382(a).  In

order to be eligible to receive SSI benefits, an individual who lives with his or her spouse may

possess no more than $3,000 in resources (including the resources of the spouse), and an

individual who does not live with his or her spouse may possess no more than $2,000 in

resources.  *Id.* § 1382(a)(3)(A), (B); 20 C.F.R. § 416.1205(c).  For purposes of determining a

minor child's eligibility, the resources of a child are generally deemed to include those of the

parent(s) living with the child, including the resources of any such parent's spouse, to the extent

those resources exceed the applicable $2,000 or $3,000 limit.  42 U.S.C. § 1382c(f)(2)(A); *see*

20 C.F.R. § 404.1202(b)(1).  Except for certain exclusions, resources include "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."  20 C.F.R. § 416.1201.

An overpayment occurs when an individual is paid more than the amount due for a given period.  *See id.* § 416.537(a).  When the Agency "finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall . . . be made by appropriate adjustments in future payments or by recovery from such individual."  42 U.S.C. § 1383(b)(1)(A); *see Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) (the Agency "may require a person who has received an overpayment to refund the amount paid in excess of the correct amount").

### C.      Waiver of Recovery of SSI Overpayment

The Agency may waive recovery of an SSI overpayment where the overpaid individual was "without fault" in connection with the overpayment, and where recovery would either "[d]efeat the purpose" of the SSI program, "[b]e against equity and good conscience" or "[i]mpede efficient or effective administration of [the Act] due to the small amount involved."  20 C.F.R. § 416.550; *see* 42 U.S.C. § 1383(b)(1)(B).  Where the Agency has properly determined that an individual is not without fault, neither the Agency nor a reviewing court need consider whether the claimant meets the additional criteria.  *See Langella v. Bush*, 161 F. App'x 140, 142 (2d Cir. 2005) (citing *Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985)).  It is the recipient's burden to establish that he or she is eligible for a waiver.  *Langella v. Bush*, No. 03cv5114 (RWS), 2004 WL 2668400, at *10 (S.D.N.Y. Nov. 22, 2004); *Hillenberg v. Bowen*, No. 85cv3671 (PKL), 1986 WL 6498, at *1 (S.D.N.Y. June 2, 1986).

### 1.   When a Claimant May Be Found To Be
### "Without Fault" in Connection with an Overpayment

Although a finding of fault "depends on all of the circumstances in the particular case," an individual will be found to be at fault in connection with an overpayment when an incorrect payment resulted from a "[f]ailure to furnish information which the individual knew or should have known was material" or from "[a]n incorrect statement made by the individual which he [or she] knew or should have known was incorrect," or where the individual "did not return a payment which he [or she] knew or could have been expected to know was incorrect." 20 C.F.R. § 416.552.  In determining whether an individual was without fault in connection with an overpayment, the Agency must "specifically take into account any physical, mental, educational, or linguistic limitation of [the] individual (including any lack of facility with the English language)." 42 U.S.C. § 1383(c)(1)(A); 20 C.F.R. § 416.552.  Among other things, the Agency must consider "the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, . . . [and] ability to comply with the reporting requirements." 20 C.F.R. § 416.552; *see Kennedy v. Apfel*, No. 96cv3295 (LAP) (SEG), 1998 WL 567676, at *5-6 (S.D.N.Y. June 26, 1998) (considering claimant's education level and literacy in determining that he was not without fault concerning an overpayment of SSDI benefits), *aff'd*, 173 F.3d 844 (2d Cir. 1999).

Bad faith is not necessary for a finding of fault; "'rather, an honest mistake may be sufficient to constitute fault.'" *Cruz v. Astrue*, No. 08cv5588 (PKC), 2009 WL 1835632, at *3 (S.D.N.Y. June 24, 2009) (quoting *Center*, 704 F.2d at 680).  Furthermore, an overpaid individual "is not relieved of liability and is not without fault solely because [the Agency] may have been at fault in making the overpayment." 20 C.F.R. § 416.552; *see Center*, 704 F.3d at 680.

2. <u>**Additional Criteria for Waiver Eligibility**</u>

As noted above, in addition to being without fault, the recipient, in order to be eligible for a waiver, must show that recovery of the overpayment would:  (1) defeat the purpose of the SSI program, (2) be against equity and good conscience, or (3) impede efficient or effective administration. *See* 20 C.F.R. § 416.550.

Recovery of an overpayment would "defeat the purpose" of the SSI program if it would deprive the recipient of "income required for ordinary and necessary living expenses." *Tejada v. Colvin*, No. 14cv841 (JLC), 2014 WL 4744435, at *3 (S.D.N.Y. Sept. 24, 2014) (citing 20 C.F.R. § 416.553).  "Ordinary and necessary expenses" include "[f]ixed living expenses, such as food and clothing, rent, mortgage payments, [and] utilities"; medical expenses; "[e]xpenses for the support of others for whom the individual is legally responsible"; and "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living."  *See* 20 C.F.R. § 416.553(a) (incorporating by reference § 404.508(a)).  Recovery from an individual who, at the time of any such recovery, would be eligible for SSI benefits is generally deemed to defeat the purposes of the SSI program.  *See id.* § 416.553(b); *see also* POMS § SI 02260.020, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0502260020 (last visited Aug. 27, 2015).

Recovery of an overpayment would "be against equity and good conscience" if the recipient "changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." *Id.* § 416.554.  This requires the individual to demonstrate that he or she "spent the money in a way in which [he or] she would not have but for the receipt of the overpayments, such as

incurring a debt or making substantial purchases [he or] she otherwise would not have made in reliance on the overpayment." *Tejada*, 2014 WL 4744435 at *3 (citations omitted).

Finally, recovery of an overpayment would "impede efficient or effective administration" of the SSI program if the amount recoverable is too insignificant. *See* 20 C.F.R. § 416.555. The threshold amount is determined based on the administrative cost of recovering an overpayment, *see id.*, and, effective September 27, 2008, was increased by the Agency from $500.00 to $1,000.00, *see* POMS § SI 02260.030, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0502260030 (last visited Aug. 27, 2015).

## II.   THE APPEALS COUNCIL'S DECISION

The Commissioner's final decision is the Appeals Council's April 18, 2013 decision, in which the Appeals Council found that Plaintiff was at fault with respect to the overpayment of her benefits as well as the overpayment of J.O.'s benefits, and, as a result, found her liable for both. (*See generally* R. at 9-12.)[11] The Appeals Council also found that J.O. was not individually liable for the overpayment of his benefits, based, in part, on a separate Appeals Council decision, referenced in the April 18 decision but not included in the Record, that J.O. was without fault concerning the overpayment. (*Id.* at 11.)

In its April 18, 2013 decision, the Appeals Council noted that it adopted the ALJ's statements regarding the applicable law, as well as the "evidentiary facts." (*Id.* at 9.) The Appeals Council also noted that the ALJ had considered Plaintiff's "allegation concerning the difficulty she experienced in communicating with [the Agency]," but had "found [that] [Plaintiff's] ability to read and understand [the Agency's] written materials concerning [SSI]

---

[11] In its April 2013 decision, the Appeals Council noted that it had notified Plaintiff and her attorney of its intended action, and had provided Plaintiff with the opportunity to submit additional arguments or evidence, but that none had been received. (*Id.* at 9.)

resource limitation and reporting requirements were not limited in any way, in light of her education and language ability." (*Id.* at 10.) The Appeals Council stated that, in requesting review, Plaintiff's attorney had "mainly argued" that "the record contain[ed] no documentation showing [the Agency had] provided any written material to alert [Plaintiff] of the resource limitation and reporting requirements," as well as that Plaintiff did not "willfully and knowingly" fail to report her resources. (*Id.*)

The Appeals Council went on to state that, while it "[could] not locate the initial application" that Plaintiff had submitted for SSI benefits on her own behalf, it had located Plaintiff's application for SSI benefits on J.O.'s behalf, in which Plaintiff had not disclosed the bank account at issue, as well as the two notices that the Agency had mailed to her regarding J.O.'s eligibility for benefits. (*Id.*) Even though these notices pertained only to J.O.'s eligibility for benefits, the Appeals Council stated that these notices "contained specific language informing [Plaintiff] of the resource limitations for [SSI] eligibility, and the effect parents' income and resources would have on a child's [SSI] payments." (*Id.*) It also stated that the notices "listed the specific factors upon which [J.O.'s] payments were based on [*sic*], but made no reference to [Plaintiff's] bank account containing over $6,000.00." (*Id.*) The Appeals Council reasoned that, "[a]s these notices were issued to [Plaintiff] prior to the overpayment period, they show she received written information specifying the resource limitations." (*Id.*) On this basis, the Appeals Council affirmed the ALJ's determination that Plaintiff was not without fault in causing *both* overpayments, as she did not timely provide the Agency with

information she knew or should have known was material, or, in the alternative, accepted payments she knew or should have been expected to know were incorrect.  (*Id.*)[12]

With respect to J.O.'s overpayment, though, the Appeals Council also determined that the ALJ had erred by failing to conduct a "separate evaluation of the liabilities between the representative payee and the child claimant in repaying the overpayment."  (*Id.* at 11 (citing Social Security Ruling 84-6a (S.S.A. Jan. 1, 1984).)  The Appeals Council noted that, where a child's benefits are paid to a representative payee, the representative payee bears the responsibility for reporting events that might affect the child's benefits.  (*Id.*)  It further noted that, in such situations, the child was presumed to be without fault; that, in a "separate determination," it had found J.O. to be without fault; and that recovery from J.O. would defeat the purposes of the Act.  (*Id.*)  On this basis, the Appeals Council determined that J.O. was not jointly liable for the overpayment.  (*Id.*)

The Appeals Council concluded that Plaintiff was not without fault in causing the overpayments of $821.00 and $15,115.00; that recovery of the overpayments was not waived; and that Plaintiff was liable for the repayment of her own excess benefits and also individually liable for the amount of the overpayment to J.O.  (*Id.*)

## III.   REVIEW OF THE APPEALS COUNCIL'S DECISION

In her motion, Defendant argues that the Appeals Council's decision should be affirmed because the determination that Plaintiff was not without fault for the overpayments is supported by substantial evidence.  (*See* Def. Mem., at 8-11.)  Plaintiff, in response, argues that, based on

---

[12] As noted above (*see* Background Section E, *supra*), the Appeals Council also noted, in contrast with the instruction in its previous remand order that, "upon closer review of [the Agency's] policies . . . [the ALJ's] specific analysis concerning whether [Plaintiff] 'willfully and knowingly' failed to report excess resources . . . appears unnecessary" (R. at 10).

the circumstances of her initial application for SSI, she did not understand the SSI eligibility requirements.  (*See generally* Pl. Aff.)

As a threshold matter, despite multiple errors of law committed by the Agency during the course of the administrative proceedings – including the ALJ's initial determination, based solely on his own observation of Plaintiff, that her hearing was "unrestricted" (when she had a documented hearing impairment); the error of law in the Appeals Council's March 11, 2011 remand order (in which it erroneously stated that Plaintiff could only be found to be at fault if she had "willfully and knowingly" failed to report excess resources); and the ALJ's subsequent application of this same inapplicable legal standard[13] – the Appeals Council's final decision demonstrates application of the appropriate legal standards in resolving Plaintiff's waiver request.  The Appeals Council considered, as required, whether Plaintiff had demonstrated that she was "without fault" in causing the overpayment of J.O.'s benefits, and invoked the standards set forth in 20 C.F.R. § 416.552 in making its determination in this regard.  (*See* R. at 10 (determining that Plaintiff was not without fault because she had not provided information that she knew or should have known was material, or, alternatively, because she had accepted payments that she knew or should have known were incorrect).)  The Appeals Council also adopted the ALJ's findings that Plaintiff was able to read and understand the Agency's written materials (*id.*), and this finding, in turn, rested upon consideration of the factors required by the applicable regulation, including whether Plaintiff manifested any mental, educational, or linguistic limitation that would inhibit her ability to understand her responsibilities (*id.* at 25). Accordingly, this Court turns to the question of whether the Appeals Council's decision as to

---

[13] This Court is also very troubled by the fact that, despite Plaintiff's known hearing impairment, there is no indication in the Record that the Agency took *any* steps to accommodate her impairment before she obtained counsel.

Plaintiff's fault is supported by substantial evidence, and considers this question separately with respect to the overpayment of J.O.'s benefits and the overpayment of Plaintiff's benefits.

### A. The Appeals Council's Determination That Plaintiff Was Not Without Fault Concerning the Overpayment of J.O.'s Benefits

The Appeals Council found that Plaintiff had failed to provide the Agency with information that she knew or should have known was material, and, in the alternative, that she had accepted payments that she knew or should have known were incorrect, and that, as a result, she was not without fault concerning the $15,115.00 overpayment of J.O.'s SSI benefits.  In making this determination, the Appeals Council relied on the written notices mailed to Plaintiff regarding J.O.'s benefits, as well as the ALJ's findings that Plaintiff's "ability to read and understand" the Agency's written materials "were not limited in any way, in light of her education and language ability."  (*Id.* at 10.)

As to the written notices, the Appeals Council stated that Plaintiff had been notified, in writing, of "the effect [that] parents' income and resources would have on a child's [SSI] payments," referring to the notices that the Agency mailed to Plaintiff regarding J.O.'s eligibility for benefits in January and February of 2005.  (*Id.*)  As noted above, each of these notices included a handout titled "How Parents' Income and Resources Affect a Child's SSI."  (*Id.* at 340-42, 357-59.)  This handout contained a section titled "What is a resource for SSI purposes?" explaining that "[a] resource is money and anything else that parents own and can turn into cash," and that "[r]esources include cash, bank accounts, . . . and other property."  (*Id.* at 341, 358.)  The handout also contained a section titled "Why are resources important in the SSI program?" explaining that "[t]o be eligible for SSI, the child's resources and the parents' own resources cannot be more than the SSI resource limit," and setting forth the limits for children

and their parents.  (*Id.*)  At no point has Plaintiff argued that she did not receive these notices.[14]

On the Record presented here, these notices constitute substantial evidence that Plaintiff was

informed, in writing, of how her bank account might affect J.O.'s SSI eligibility.

Further, in finding that Plaintiff was not without fault, an issue as to which Plaintiff bore

the burden of proof during the administrative proceedings, the Appeals Council adopted the

ALJ's determination that he "[could not] see any reason why [Plaintiff] would have difficulty

reading and understanding her written reporting responsibilities."  (*Id.* at 25.)  This finding is

supported by substantial evidence.  Indeed, the only evidence in the Record that Plaintiff's ability

to read or understand written materials may have been limited is the letter Plaintiff wrote in

support of her request for Appeals Council review of the ALJ's initial decision denying her

waiver request, in which she contended that, at the time she applied for benefits (in 2001), she

had "just c[o]me from a different country where languages w[ere] different and had spent most

of [her] years in foster care," and that she "had no knowledge of the outside world."  (*Id.* at 100.)

It was in 2005, though, that Plaintiff was notified of the SSI resource limitations with respect to

J.O.'s benefits, and there is no indication in the Record that she experienced any language

limitations at that time.  Furthermore, the ALJ noted, based on Plaintiff's testimony, that Plaintiff

had received her bachelor's degree (*id.* at 25), and, despite Plaintiff's argument on the current

motion that she had not received this degree before she applied for benefits on her own behalf, it

would appear that she was college educated by the time she applied for SSI benefits for J.O. (*see*

Pl. Aff., at 4).  This evidence supports the ALJ's determination (adopted by the Appeals Council)

---

[14] Although these documents were not before the ALJ, the Appeals Council, upon adding these documents to the Record, apprised Plaintiff that it intended to determine that she was not without fault, and provided Plaintiff with the opportunity to request a hearing or submit additional evidence or arguments.  (*Id.* at 364-66.)

that Plaintiff would have been able to comprehend the written notices she was sent, and constitutes substantial evidence supporting this finding.

As a result, this Court concludes that the Appeals Council's determination that Plaintiff knew or should have known that she possessed resources in excess of those permitted for J.O. to receive SSI benefits was supported by substantial evidence.  This is not to say that Plaintiff had *actual* knowledge that her resources rendered J.O. ineligible or that she was required to report her bank account, which is the crux of her argument on the current motion (*see* Pl. Mem., at 3 ("I have never denied that I did have the money or even try to hide the money but I am innocent of not knowing that I was not supposed to have that amount")), but, as discussed above, even an "honest mistake may be sufficient to constitute fault," *Cruz*, 2009 WL 1835632 at *3. Irrespective of Plaintiff's understanding at the time that she applied for SSI benefits on her own behalf, Plaintiff must be charged with a responsibility to review the notices she was mailed regarding J.O.'s SSI benefits after she applied for benefits on his behalf.  *See Schenck v. Comm'r of Soc. Sec.*, No. 14cv1445 (KPF), 2015 WL 4393077, at *4 (S.D.N.Y. July 16, 2015) (finding that claimant was not without fault for an overpayment, based, in part, on the fact that she had received "a number of notices over the years explaining the eligibility requirements for SSI benefits").

Accordingly, I recommend that the Appeals Council's determination that Plaintiff was ineligible for a waiver of recovery regarding the $15,115.00 overpayment of J.O.'s benefits be affirmed.

> ### B.   The Appeals Council's Determination That Plaintiff Was Not Without Fault Concerning the Overpayment of Her Own Benefits

In its decision, the Appeals Council also determined that Plaintiff was not without fault in causing the $821.00 overpayment of the SSI benefits she received on her own behalf.  (R. at

10, 11.)  The Appeals Council based this determination on the same findings as its determination with respect to J.O.'s benefits:  *i.e.*, that Plaintiff had been apprised, in writing, of the SSI resource limit, and that she had not established any limitation that would have prevented her from understanding those notices.  (*Id.* at 10.)

The evidence cited by the Appeals Council, however, does not support the determination that Plaintiff had received written notice of the resource limits with respect to her own SSI benefits.  Instead, the notices relied on by the Appeals Council relate only to how a *parent's* resources would affect his or her *child's* eligibility for SSI benefits, providing no information as to how Plaintiff's resources would affect her own eligibility for benefits.  (*See id.* at 340-42, 357-59.)  As a result, these notices do not constitute substantial evidence to support the determination that Plaintiff had received written notice of the eligibility requirements with respect to her own benefits.  Furthermore, to the extent that the Appeals Council adopted the ALJ's "evidentiary facts" regarding notice, those "facts" also lack support in the Record.  For example, the ALJ noted that "other documents are provided to a claimant when they first become eligible for their checks, which would . . . include written notice of [Plaintiff's] responsibilities," and that, during redeterminations of Plaintiff's eligibility for benefits (made in 2002 and 2003), Plaintiff "would have attested to having resources below the $2,000.00 SSI limit, and this would have been in a written format."  (*Id.* at 25.)  Although documents supporting such conclusions may well exist, none are actually included in the Record before this Court.

Given that the Appeals Council's decision that Plaintiff received written notice of the resource limits with respect to her own SSI eligibility (and was thus not without fault in failing to disclose her resources) is not supported by any evidence in the Record, this Court concludes that the decision cannot be upheld.  Nonetheless, as there is a "basis to conclude that a more complete

record might support the Commissioner's decision," and as the Court would have discretion to remand on this ground, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004), *amended on other grounds on reh'g*, 416 F.3d 101 (2005), this Court recommends that the issue be remanded to the Agency for a redetermination of whether Plaintiff was without fault with respect to the overpayment of her benefits.

On remand, the Agency should be directed to consider the question of whether documentary evidence exists that Plaintiff was provided information in writing regarding her own eligibility for SSI benefits, such that she knew or should have known (a) that she was required to inform the Agency of the funds in her bank account in connection with her own application for, or continuing receipt of, benefits, and/or (b) that she was not in fact entitled to the SSI benefits she received on her own claim.[15]  The Agency should also be directed to consider whether (during a redetermination of Plaintiff's eligibility for benefits or at any other relevant time) Plaintiff made an incorrect statement to the Agency, with respect to her own benefits, that she knew or should have known was incorrect, and that caused the overpayment.  If any additional documentary evidence located by the Agency as to these issues does not establish that Plaintiff *was* at fault, then the Agency should determine that she was without fault and proceed to consider whether she meets any of the three additional criteria that would entitle her to a waiver (*i.e.*, whether recovery of the overpayment would defeat the purposes of the SSI

---

[15] This Court does not recommend that the matter be remanded for inquiry as to whether Plaintiff received oral notice, as it is undisputed that Plaintiff is hearing impaired – indeed, she was awarded SSI benefits on this basis (*see* Def. Mem., at 1 ("[P]laintiff applied for and received SSI benefits based on deafness")) – and there is no reason to believe that further development of the Record could yield information that she would have been able to hear and understand information presented orally by the Agency, during her application process or otherwise prior to or within the overpayment period at issue.

program, would be against equity and good conscience, or would impede efficient and effective administration).

In sum, this Court recommends that the Appeals Council's decision that Plaintiff was not without fault concering the $821.00 overpayment of her own benefits be vacated, and that the matter be remanded to the Agency for further consideration of that question, and, if appropriate, of the criteria listed in 20 C.F.R. § 416.550(b).

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that:

(1)    Defendant's motion for judgment on the pleadings (Dkt. 17) be granted to the extent that the Commissioner's decision that Plaintiff was not entitled to a waiver of recovery of the $15,115.00 overpayment of J.O.'s benefits be affirmed, and that Defendant's motion be denied in all other respects;

(2)    Plaintiff's opposition to Defendant's motion (Dkt. 23) be construed as a cross-motion for judgment on the pleadings in her favor, and, so construed,

    (a)    the cross-motion be granted to the extent that the Commissioner's decision that Plaintiff was not without fault concerning the $821.00 overpayment of Plaintiff's benefits be vacated and the matter remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g);

    (b)    the Agency be directed to consider, upon remand, whether documentary evidence exists that

        (i)    Plaintiff was provided information in writing regarding her own eligibility for SSI benefits, such that she knew or should have known (A) that she was required to inform the Agency of the funds in her bank account in connection with her own application for, or continuing receipt of, benefits; and/or (B) that she was not in fact entitled to the SSI benefits she was overpaid; or

> > (ii)     Whether, at any relevant time, Plaintiff made an
> > incorrect statement to the Agency with respect to
> > her own benefits that she knew or should have
> > known was incorrect, and that caused the
> > overpayment;
>
> > (c)     the Agency be instructed that, if, upon remand, additional
> > documentary evidence located by the Agency as to these
> > issues does not establish that Plaintiff *was* at fault, then the
> > Agency should determine that she was without fault and
> > proceed to consider the criteria listed in 20 C.F.R.
> > § 416.550(b); and
>
> > (d)     the cross-motion be denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall

be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the

Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, Room 2204,

New York, NY 10007, and to the chambers of the undersigned, United States Courthouse, 500

Pearl Street, Room 1660, New York, NY 10007.  Any requests for an extension of time for filing

objections should be directed to Judge Gardephe.  <u>As Plaintiff is proceeding in this action *pro se*,</u>

<u>any submissions she makes to the Court (including any objections to this Report and</u>

<u>Recommendation for filing, any courtesy copies for judges' chambers, and any requests for</u>

<u>extensions of time) should be mailed or otherwise delivered by him to the Court's *Pro Se* Office</u>.

FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S.

140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58

(2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
       August 31, 2015

                                Respectfully submitted,

                                DEBRA FREEMAN
                                United States Magistrate Judge

Copies to:

Ms. Ijeoma Okolo
1516 Beach Ave., Apt. 22
Bronx, NY 10460

Counsel for Defendant (via ECF)